UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| A.S., by and through his parents and guardians, M.S. and B.S.<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>IBEW LOCAL UNION NO. 124 HEALTH AND WELFARE FUND, THE BOARD OF TRUSTEES OF THE IBEW LOCAL UNION NO. 124 HEALTH AND WELFARE FUND, ROBERT BLAKE, KENNETH C. BORDEN, RUDY CHAVEZ, MICHAEL J. DAMICO, DONALD G. LAFFOON, ENRIQUE M. RODRIGUEZ, AND ANY OTHER INDIVIDUAL MEMBER OF THE BOARD OF TRUSTEES OF IBEW LOCAL UNION NO. 124 HEALTH AND WELFARE FUND,<br><br>　　　　　　Defendants. | Civil Action No. |

## COMPLAINT [REDACTED]

### I. PARTIES

1. **_A.S._** Plaintiff A.S. is a four-year-old child dependent of M.S. and B.S., who resides in Jackson County, Missouri. A.S. is a beneficiary, as defined by ERISA § 3(8), 29 U.S.C. § 1002(8), of the IBEW Local Union No. 124 Health and Welfare Fund. A.S.'s coverage is through M.S.'s employment.

2. **_IBEW Local Union No. 124 Health and Welfare Fund._** Defendant IBEW Local Union No. 124 Health and Welfare Fund (the "Plan") is an "employee welfare benefit plan" under the Employment Retirement Security of Act of 1974 ("ERISA"). The Plan covers more than 50 employees. The Plan is a self-funded group plan that provides both medical/surgical benefits and

mental-health/substance-use-disorder benefits to covered employees and their dependents such as A.S.

3. ***Robert Blake, Kenneth C. Borden, Rudy Chavez, Michael J. Damico, Donald G. Laffoon, Enrique M. Rodriguez, and any other member of the Board of Trustees of IBEW Local Union No. 124 Health and Welfare Fund.*** According to the Plan Document, the identified individuals comprise the Board of Trustees of the Plan. *See Appendix A*, at ii. The Board of Trustees is the "Plan Sponsor" and "Plan Administrator," and its members are the named fiduciaries under ERISA.

## II. JURISDICTION AND VENUE

4. Jurisdiction of this Court arises pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

5. Venue is proper under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because, *inter alia*, the breach took place in this district.

6. Divisional venue is proper within the district under LCR 3.2(b), because this is a case with multiple defendants, and at least one of the Defendants -- the Plan -- is sited in the Western Division of the Western District of Missouri.

7. In conformity with 29 U.S.C. § 1132(h), Plaintiff has served this Complaint by certified mail on the Secretary of Labor and the Secretary of Treasury.

## III. NATURE OF THE CASE

8. Plaintiff A.S. has been diagnosed with Autism Spectrum Disorder ("ASD") a mental-health condition listed in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM") produced by the American Psychiatric Association.

9. Early and intensive provision of Applied Behavior Analysis ("ABA") therapy can dramatically improve the health and life-long well-being of individuals with ASD. The Plan, however, excludes coverage of medically necessary ABA services to treat ASD.

10. Such exclusion violates federal law, including the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of Act of 2008 (the "Parity Act"), which amends ERISA. The Parity Act, which took effect on October 3, 2009 was "designed to end discrimination in the provision of coverage for mental health and substance use disorders, as compared to medical and surgical conditions." *Coalition for Parity v. Sebelius*, 709 F. Supp. 2d 10, 13 (D.D.C. 2010). The Parity Act requires that the exclusions and limitations imposed on mental-health services be "no more restrictive" than those applied to substantially all medical and surgical benefits. *See* 29 U.S.C. § 1185a(a)(3)(A)(ii). It also requires that the Plan not impose any special treatment limitations only on mental-health benefits. *Id.*

11. Defendants violated the Parity Act when they adopted a uniform policy excluding all coverage for ABA therapies which treat ASD, even when medically necessary. The Plan excludes this mental health service, even though the Plan generally authorizes coverage of outpatient medical/surgical and mental-health services for its subscribers and beneficiaries.

12. In A.S.'s case, the Plan, through its third-party claims administrator, Blue Cross Blue Shield of Kansas City ("BCBSKC"), initially authorized coverage of ABA through the Plan, at least up through October 21, 2019. Later, however, the Plan terminated coverage of A.S.'s ABA services, although these services continued to be medically necessary to treat A.S.'s mental health condition. This termination was documented in a letter dated January 23, 2020 sent to A.S.'s parents and their ABA provider, the Kansas City Autism Training Center ("KCATC"). *See* **Appendix B.**

13. When B.S. appealed the Plan's termination of A.S.'s ABA coverage, the Plan denied her appeal, asserting that ABA therapy to treat ASD was excluded from the Plan Document's coverage. *See **Appendix C***.

14. The Plan's exclusion of ABA therapy to treat ASD, while generally covering outpatient medical/surgical treatment violates the requirements of the Parity Act, 29 U.S.C. § 1185a, and its implementing regulations, which are incorporated as "terms of the plan[s]" into the Plan under ERISA. Specifically, the ABA exclusion is a special exclusion imposed only on outpatient mental-health treatment, in violation of the Parity Act. Alternatively, the ABA exclusion applies more restrictively than the predominant-treatment limitations applied to substantially all outpatient medical/surgical services. 29 U.S.C. § 1185a(3)(A)(ii).

15. By failing to comply with the Parity Act, which modifies the terms of the Plan, Defendants systemically and uniformly fail to properly process claims and administer the Plan and failed to do so with regard to A.S.'s claims for ABA services. The Plan's participants and beneficiaries, including A.S., have not received the benefits to which they are entitled under the Plan and Federal law. The Plan's participants and beneficiaries, including A.S., are misinformed by Defendants with respect to their right to coverage of medically necessary ABA therapy under the Plan as modified by the Parity Act.

16. This lawsuit seeks remedies on behalf of A.S. for Defendants' failure to comply with the terms of the Plan as modified by federal law. It further seeks to recover the benefits that have been wrongfully denied to A.S. It also seeks a court order declaring that Defendants' ABA exclusion is illegal and void. The lawsuit further seeks an injunction to prevent any future or ongoing efforts by Defendants to use and enforce against A.S. any exclusions, limitations, policies or practices that impermissibly deny, exclude or limit his access to coverage for medically

necessary outpatient mental-health services under the Plan. Finally, it seeks to require Defendants to provide accurate information concerning the coverage of ABA services under the Plan to A.S. and all participants and beneficiaries.

### IV. FACTUAL BACKGROUND

**A. The Plan Authorizes A.S.'s ABA but then Reverses its Authorization.**

17. During all relevant time periods, A.S. has been a beneficiary of the Plan, which is subject to ERISA pursuant to 29 U.S.C. § 1003.

18. Since June 11, 2018, and continuing to the present, A.S. has been diagnosed with Autism Spectrum Disorder ("ASD").

19. Plaintiff A.S. has required and continues to require Applied Behavior Analysis ("ABA") to treat his ASD. A.S. is likely to continue to require ABA services for the foreseeable future. A.S. has been prescribed ABA therapy by several treatment providers, all of whom consider ABA to be medically necessary to treat his ASD.

20. After receiving ABA through a state-funded early intervention program, A.S. was enrolled at The Bridge Clinic, a program affiliated with the University of Kansas. A.S. began to receive ABA services through the Bridge Clinic in November of 2018.

21. Because the Bridge Clinic's program was of limited duration, A.S.'s parents sought out another provider to take over furnishing ABA services to A.S. when it ended.

22. A.S. was enrolled with the Kansas City Autism Training Center ("KCATC") and began receiving ABA services in April of 2019.

23. Claims for A.S.'s ABA services were submitted to Defendants through its claims administrators BCBSKC and/or New Directions. Defendants, through BCBSKC, authorized payment for A.S.'s ABA therapy beginning in November of 2018 and reauthorized his ABA services when A.S. transferred to the Kansas City Autism Center.

– 5 –

Case 4:21-cv-00142-FJG   Document 1   Filed 03/04/21   Page 5 of 14

24. On November 15, 2019, KCATC requested reauthorization of A.S.'s ABA service for the period from October 22, 2019 through April 21, 2020. *Appendix D*

25. In or around January of 2020, B.S. participated in a telephone call from KCATC in which B.S. learned for the first time that the Plan had denied authorization for A.S.'s ABA services.

**B.     Appeal Process and Plan Documents**

26. B.S. contacted Defendants' benefit office to investigate the termination of A.S.'s ABA benefits. The benefit office staff informed her that, notwithstanding Defendants' prior payment for ABA services, it was not a covered benefit.

27. The staff initially told B.S. that once the Plan's decision to deny coverage for A.S.'s ABA services had been made, there was no action B.S. and her family could take to reverse the decision, misrepresenting A.S.'s appeal rights under ERISA. *See, e.g.,* 29 C.F.R. §§ 2560.503-1(b), (h). In a subsequent call, a different benefit office employee informed B.S. that she could appeal the termination of coverage.

28. In late January or early February 2020, A.S.'s parents and his ABA provider received a letter sent on behalf of Defendants in which authorization for A.S.'s ABA services was formally denied:

> This letter confirms that New Directions is denying benefits for Applied Beh. Analysis (ABA) treatment provided on October 22, 2019 to April 21, 2020 Tanya Baynham, BCBA. Our information indicates: There is no benefit available under the members benefit plan for the requested Applied Behavior Analysis is considered an excluded benefit. [*sic*]

*Appendix B*, p.1.

29. This was the first written notice that B.S. or her family had received from or on behalf of the Plan informing A.S.'s family that the Plan had discontinued authorization of coverage for A.S.'s ABA services.

30. On or around January 31, 2020, the KCATC submitted claims to BCBSKC for ABA services it provided to A.B. after October 21, 2019. Notwithstanding this denial letter, Defendants paid for some of A.S.'s ABA services that KCATC delivered to A.S. during the period running from October 22, 2019 to December 31, 2019. Defendants, however, did not pay for any of A.S.'s ABA services provided in 2020.

31. On February 13, 2020, A.S.'s parents submitted an appeal of Defendants' termination of A.S.'s ABA services. *See Appendix E*.

32. Attached to the appeal was a letter from Tanya Baynham, a Board-Certified Behavior Analyst and Licensed Behavioral Analyst who was the Program Director at the KCATC. Ms. Baynham stated that A.S.:

> requires approximately 30 hours of ABA each week to make gains in all major areas of development; speech and communication, self-help and independent skills, and social and play skills. ABA is a practice recommended by the American Academy of Pediatrics and the Surgeon General as an evidence-based treatment for children on the Autism Spectrum. No other treatment (e.g., speech therapy or occupational therapy, etc.) would be effective for the treatment of [A.S.'s] Autism unless it was done in addition to, and in collaboration with, an ABA program.

*See Appendix F.*

33. The letter also detailed the clinical benefits A.S. had already received as a result of his ABA therapy. *Id*.

34. On April 21, 2020, Defendants' representative, Kevin Smith, sent a letter denying the appeal by A.S.'s parents. The letter stated that the Plan's appeals committee had reviewed and

– 7 –
Case 4:21-cv-00142-FJG   Document 1   Filed 03/04/21   Page 7 of 14

denied the appeal "per the Health and Welfare Plan document Amendment No. 2 Effective September 22, 2015 Exclusions regarding Section VI, subsection N #19". **Appendix C.**

35. The letter also stated that the full Board of Trustees of the Plan had met on April 14, 2020 and that "[p]er the Standards of the current Health and Welfare plan document there will be no change. The final determination is denied." *Id.*

36. After receiving Defendants' denial of their appeal, A.S.'s parents requested that the Plan furnish them materials related to the Plan's decision to deny coverage for ABA services.

37. In response to this request, the Plan's employee Kevin Smith sent A.S.'s parents a letter dated June 3, 2020 to which were attached various materials. *See **Appendix G***

38. One of the attachments to this letter was a document titled "I.B.E.W. Local Unions No. 124 Health and Welfare Fund Plan Document Amendment No. 2. *See **Appendix H***. Among other things, this document purports to add "Charges for Applied Behavioral Analysis Therapy" to the Plan Document's list of types of charges for which "Payment will not be made under the [Plan's] Major Medical Expense Benefit" *Id.,* ("I.B.E.W. Local Union No. 124 Health and Welfare Fund *Plan Document* as of January 1, 2014"*),* pp. 29-30.

39. Notwithstanding this purported 2015 Amendment to the Plan Document, Defendants continued to furnish enrollees with copies of the Plan Document that made no mention of any exclusion of coverage of charges for ABA. In particular, before the June 3, 2020 letter from Kevin Smith, the prior copies of the Plan Document that M.S. and B.S. received contained no ABA exclusion.

40. The Plan's website includes a web page titled "Fund Documents," which lists links to various documents providing information about or governing the Plan's benefits. *See* http://www.ibew124benefits.org/fund_documents.html (last visited June 29, 2020). This page

– 8 –

includes a link titled "Plan Document (PDF Format)." Clicking on this link leads to a document that is identical to the copy of the Plan Document that M.S. and B.S. had received from the Plan. *Compare* http://www.ibew124benefits.org/H&W_Plan_Document_2014.pdf (last visited March 3, 2021) with ***Appendix A***. Like the Plan Document received by M.S. and B.S., the Plan's online copy of the Plan Document contains no ABA exclusion.

41. The Plan's "Fund Documents" web page also contains a link titled "2019-2020 Summary of Benefits and Coverage (PDF Format)." This link leads to a document that summarizes the Plan's health benefits and coverage. *See* http://www.ibew124benefits.org/H&W_Benefit_Summary_2019-2020.pdf (last visited March 3, 2021). A printout of this document is attached as ***Appendix I***. This document contains no ABA exclusion.

C. **The ABA Exclusion Violates the Federal Parity Act**

42. The Plan covers outpatient treatment for "Mental and Nervous Disorders."

43. The Plan defines "Mental and Nervous Disorders" as "any disturbance of emotional equilibrium, as manifested in maladaptive behavior or impaired functioning, whether caused by genetic, physical, chemical, biological, psychological, social or cultural factors." *App. A* at 42 Based upon information and belief, ASD is a Mental and Nervous Disorder under the Plan. This is consistent with Missouri law, which defines "mental health condition" as any condition or disorder defined by categories listed in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders. *See* 376.1550.2(4) R.S. Mo.

44. Thus, as defined by the Plan Document and relevant state and federal law, ABA services to treat ASD are mental health services that treat a mental health condition. ABA therapy to treat ASD can be medically necessary, and is medically necessary for A.S.

45. The Plan, however, has denied all coverage of ABA therapy for A.S.'s ASD through its ABA exclusion. This special exclusion violates the Parity Act. *See* 29 U.S.C. § 1185a(3)(A)(ii).

46. Alternatively, the application of the Plan's ABA exclusion is imposed predominantly on outpatient mental-health services and is not imposed on substantially all outpatient medical/surgical services. *See id.* As a result, the Plan's application of the ABA exclusion is not "at parity" with the Plan's coverage of outpatient medical/surgical services. As a result of the ABA exclusion, A.S. and their parents paid for or owe payment for ABA services and face the imminent threat that they will have to continue to do so in the near future.

47. Defendants failed to undertake any analysis as to whether the ABA therapy exclusion complied with the Parity Act. When B.S. requested a complete copy of the medical necessity criteria considered by the Plan when it determined to apply the ABA exclusion, the representative of the Plan wrote:

> The Fund did not apply medical necessity criteria, non-quantitative treatment limitations or other factors referred to in 29 C.F.R. 2590.712. No factors under 29 C.F.R. 2590.712 were used in the Trustees determination because ABA therapy is excluded under the Plan.

*See **Appendix G**,* pp. 1-2.

48. In light of the established Plan documents, statements and written representations by the Plan to the parents and providers of A.S., any attempt to pursue administrative remedies is futile. Nonetheless, A.S. has completed the internal appeal process within the Plan over its denial of coverage of his ABA services to no avail and has thus exhausted the Plan's administrative remedies.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM:
### CLAIM FOR RECOVERY OF BENEFITS, CLARIFICATION OF RIGHTS UNDER TERMS OF THE PLANS AND CLARIFICATION OF RIGHT TO FUTURE BENEFITS UNDER THE PLAN
### ERISA § 502(A)(1)(B), 29 U.S.C. § 1132(A)(1)(B)

49. A.S. re-alleges all the paragraphs above.

50. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides that a participant or beneficiary may bring an action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

51. A.S. is entitled to recover benefits due him under the terms of the Plan as modified by the requirements of the Parity Act, which is amended into ERISA. A.S. is also entitled to a declaration of present and future rights to coverage of ABA services to treat his ASD consistent with the Parity Act.

### SECOND CLAIM:
### CLAIM TO ENJOIN ACTS AND PRACTICES IN VIOLATION OF THE TERMS OF THE PLANS, TO OBTAIN OTHER EQUITABLE RELIEF AND TO ENFORCE THE TERMS OF THE PLANS
### ERISA § 502(A)(3), 29 U.S.C. § 1132(A)(3)

52. A.S. re-alleges all the paragraphs above.

53. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a participant or beneficiary may "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." A.S. seeks to enjoin Defendants from continuing to apply exclusions and limitations on their coverage of ABA services to treat A.S.'s ASD. A.S. also seeks equitable reformation of the relevant Plan documents consistent with the Parity Act.

54. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), further provides that a participant or beneficiary may obtain other appropriate equitable relief to redress violations of ERISA or enforce

plan terms. To the extent full relief is not available under ERISA § 502(a)(1)(b), 29 U.S.C. § 1132(a)(1)(B) or ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), then A.S. seeks equitable remedies including, without limitation, unjust enrichment, disgorgement, restitution, and surcharge arising out of the failure to administer the terms of the Plan as modified by the Parity Act and its implementing regulations.

### THIRD CLAIM:
### VIOLATION OF ERISA AND MENTAL HEALTH PARITY
### DISCLOSURE REQUIREMENTS
### ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A)

55. A.S. re-alleges all the paragraphs above.

56. Plaintiff seeks sanctions for up to $110 per day for defendants' failure to produce or ensure the production of the "medical necessity criteria for both medical/surgical benefits and mental health and substance use disorder benefits, as well as the processes, strategies, evidentiary standards and other factors used to apply" the Non-Restorative Exclusion. *See* 29 U.S.C. § 1024(b)(4); 29 U.S.C. §1185a(a)(4); 29 C.F.R. § 2590.712(d)(3); 29 C.F.R. § 2520.104b-1; 29 C.F.R. § 2575.502c-1.

57. If the required Parity Act analysis was never conducted by the Plan, Plaintiff seeks sanctions for defendants' failure to undertake the required analysis. Plaintiffs also seek injunctive relief to require the Plan fiduciaries to undertake the Parity Act analysis pursuant to 29 U.S.C. 1185a(8)(A), and to modify the Plan as necessary pursuant to such analysis, including, without limitation, the removal of the ABA exclusion.

### VI. DEMAND FOR RELIEF

WHEREFORE, A.S. requests that this Court:

1. Declare that the Defendants may not apply contract provisions, policies or practices that wholly exclude or impermissibly limit ABA services to treat ASD, since such exclusions

and/or limitations are not predominantly applied to substantially all outpatient medical and surgical services;

2. Enjoin Defendants from further violations of the Parity Act and terms of the Plan as modified by the Parity Act and its implementing regulations, including but not limited to, conducting the required Parity Act non-quantitative treatment analyses and removing the ABA exclusion;

3. Enter judgment in favor of A.S. for damages in an amount to be proven at trial due to the failure to provide benefits and Parity Act disclosures due under the Plan as modified by the Parity Act and its implementing regulations;

4. Award A.S.'s attorneys their fees and costs under ERISA § 502(g), 29 U.S.C. § 1132(g); and

5. Award such other relief as is just and proper.

DATED:  March 4, 2020.

        SHOOK, HARDY & BACON LLP

        /s/ Scott Kaiser
        Scott Kaiser, #54925
        2555 Grand Blvd.
        Kansas City, MO  64108
        Tel. (816) 574-6550
        Fax (816) 421-5547
        Email:  skaiser@shb.com

        SIRIANNI YOUTZ
        SPOONEMORE HAMBURGER PLLC

        Eleanor Hamburger, *Pro Hac Vice Forthcoming*
        Daniel S. Gross, *Pro Hac Vice Forthcoming*
        3101 Western Avenue, Suite 350
        Seattle, WA  98121
        Tel. (206) 223-0303
        Fax (206) 223-0246
        Email:  ehamburger@sylaw.com
        Email:  dgross@sylaw.com

        ***Attorneys for Plaintiff***